UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| **CAROLYN HALL,**<br>8815 Wolverton Road<br>Parkville, MD 21234<br><br>          **Plaintiff,**<br><br>v.<br><br>**SHEPPARD PRATT HEALTH SYSTEMS, INC.**<br>6501 N. Charles Street<br>Baltimore, MD 21204<br><br>          **Defendant.**<br><br>**SERVE:**<br>**Kelly Savoca, CFO and Registered Agent**<br>SHEPPARD PRATT HEALTH SYSTEMS, INC.<br>6501 N. Charles Street<br>Baltimore, MD 21204 | |

"The constitutional right of freedom of religion is the most inalienable and sacred of all human rights." -— Thomas Jefferson

## COMPLAINT

**NOW COMES** Plaintiff, Carolyn Hall ("Ms. Hall"), by and through undersigned counsel, and brings this suit claiming the defendant, Sheppard Pratt Health Systems, Inc. ("Sheppard Pratt"), violated state and federal civil rights laws requiring an employer to accommodate an employee's religious beliefs, stating the following for their Complaint:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Carolyn Hall is a natural person residing at 8815 Wolverton Road, Parkville, MD 21234.

2. Defendant Sheppard Pratt Health Systems, Inc. is a Maryland corporation with a principal place of business at 6501 N. Charles Street, Baltimore, MD 21204.

3. A certificate of good standing obtained on December 16, 2022, shows that Sheppard Pratt Health Systems, Inc. is in Good Standing.

4. The Articles of Amendment and Restatement, filed with the Maryland Secretary of State on November 23, 2009, indicate that Sheppard Pratt Health Systems, Inc. is organized as a 501(3)(c) charitable corporation to provide fund and maintaining a healthcare system.

5. Based on information and belief, Sheppard Pratt has more than 2700 employees.

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§1331 and 1343. Claims are asserted under 42 U.S.C. § 2000e which also confers jurisdiction on this Court.

7. Venue is proper in this judicial district as a substantial part of the alleged actions and claims in this Complaint arose in this district.

## FACTS SUPPORTING ALLEGATIONS

8. This case arises from Defendant's inaccurate interpretation of and overzealous implementation of various federal and state mandates that *all healthcare employees must be vaccinated*.

9. As has been well documented, the novel coronavirus, SARS-CoV-2, which can lead to Covid-19, has taken the world by storm, shutting down businesses, national and international transportation, schools, and local and national government operations. In early

March 2020, COVID-19 was confirmed to be present in the Maryland.[1] In an attempt to mitigate the spread and "flatten the curve," public officials at all levels of government implemented various policies. Among those policies implemented were remote work as much as possible; requiring individuals to wear masks; the installation of plexiglass dividers; and social distancing. Many of those policies did not, and do not, infringe on a person's civil rights.

10. Along with these policies, the federal government engaged in "Operation Warp Speed," which was a partnership with various pharmaceutical companies to hasten the development of a vaccine for Covid-19.[2] Three vaccines for widespread use resulted from Operation Warp Speed – the Moderna, Pfizer, and Johnson & Johnson vaccines.

11. Covid-19 vaccinations were made available for healthcare workers as early as December 2020. Throughout 2021, vaccinations were made available to adults.

12. On or about November 5, 2021, the Centers for Medicaid and Medicare (CMS), issued an Emergency Temporary Standard for Covid-19 Vaccination. COVID-19 Vaccination and Testing; Emergency Temporary Standard; Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination; Interim Final Rules. *Federal Register* Vol. *86, No. 212*. https://perma.cc/29NF-XYKJ

13. The CMS establishes health and safety standards known as Conditions of Participation, Conditions of Coverage, and Requirements for Participation for certain providers and suppliers in the healthcare field, including hospitals, psychiatric hospitals, and intermediate

---

[1] *See* https://www.fredericknewspost.com/news/continuing_coverage/coronavirus/a-timeline-of-the-covid-19-cases-in-maryland/article_4b37ff99-5375-55b3-9864-acda52bfe5b1.html
[2] *See* https://www.gao.gov/products/gao-21-319 (last visited December 18, 2022).

care facilities for individuals with intellectual disabilities. CMS can require vaccination and testing to the 21 types of providers and suppliers who accept Medicare or Medicaid funding.

14. Plaintiff does not have knowledge to allege that Defendant participates in any Medicare or Medicaid funding programs. If Defendant does not participate, the vaccination mandate would not apply to Defendant's employees. If it does, Defendant must still comply with federal antidiscrimination laws.

> Under Federal law, including the ADA and Title VII of the Civil Rights Act of 1964 as noted previously, workers who cannot be vaccinated or tested because of an ADA disability, medical condition, or sincerely held religious beliefs, practice, or observance may in some circumstances be granted an exemption from their employer. In granting such exemptions or accommodations, employers must ensure that they minimize the risk of transmission of COVID-19 to at-risk individuals, in keeping with their obligation to protect the health and safety of patients. Employers must also follow Federal laws protecting employees from retaliation for requesting an exemption on account of religious belief or disability status. For more information about these situations, employers can consult the Equal Employment Opportunity Commission's website at *https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws* .
>
> \*\*\*
>
> We also direct providers and suppliers to the Equal Employment Opportunity Commission (EEOC) Compliance Manual on Religious Discrimination for information on evaluating and responding to such requests. While employers have the flexibility to establish their own processes and procedures, including forms, we point to The Safer Federal Workforce Task Force's "request for a religious exception to the COVID-19 vaccination requirement" template as an example. This template can be viewed at *https:// www.saferfederalworkforce.gov/downloads/RELIGIOUS%20REQUEST%20FORM%20-%2020211004%20-%20MH508.pdf* .

https://www.federalregister.gov/d/2021-23831/p-307.

15. Ms. Hall is a woman of faith. Ms. Hall's religious belief and practice is based on the Christian theory of human rights, derived from the idea of *Imago Dei* (humans are created in

the image of God), embedded in Christianity and other theologies, and enshrined in the inherent and natural, God-given, right to bodily integrity, which has been reiterated in the First and Fifth Amendments to the U.S. Constitution. Central to Ms. Hall's religious belief and practice are the requirements to treat her body as a temple and to seek knowledge to understand God's will. These beliefs encompass Ms. Hall's core values; adherence to these beliefs is paramount to her identity as a Christian woman.

16. Ms. Hall worked at Sheppard Pratt from 2007 through her unlawful termination on November 12, 2021.

17. From 2007 through 2010, Ms. Hall worked as a treating nurse with the customary duties of a nurse providing inpatient care.

18. From 2010 through 2017, Ms. Hall worked as an Admissions Coordinator with duties that put her in direct contact with patients.

19. In 2017, Ms. Hall worked as an Admissions Coordinator for the Center of Eating Disorders at Sheppard Pratt program located at 6501 N. Charles Street, Baltimore, MD 21204. This position was like the duties from 2010 through 2017, except that Ms. Hall was no longer located in the building where patients received treatment.

20. Between 2017 and Ms. Hall's unlawful termination on November 12, 2021, Ms. Hall's job duties included

- Responsible for the management of inquiries from referrers, potential patients, and their families seeking access to care.
- Participates with program leadership team in the approval of admissions and coordinates the details of the entire admissions process. Maintains electronic files to facilitate program communication and to provide input to other departments.
- Work requires flexibility in schedule to be on-call for admissions, take referral calls on weekends as needed, and rotate weekend coverage with other Admissions Coordinators.

- Responsible for helping to cross-cover other Specialty Admissions programs which include but are not limited to: The Retreat, Comprehensive Outpatient Psychiatric Evaluation Service, LifeLaunch, Center for Eating Disorders, Trauma Disorders Unit, and outpatient services for The Center for OCD and Anxiety. [3]

21. Although the above may be the noticed duties of the position Ms. Hall held at Sheppard Pratt, she was considered a subject matter expert in eating disorders and the Sheppard Pratt Center for Eating Disorders. Sometime during 2019, Ms. Hall was the person with the most experience and knowledge of the program. Ms. Hall's duties included those of at least two positions, for which she accrued a great deal of leave.

22. In 2020, Ms. Hall contracted Covid-19 and took leave to recover. While recovering at home, and at the request of management, Ms. Hall used a company laptop to perform her job duties from home.

23. Performance reviews for the years 2018, 2019, and 2020 show Ms. Hall as a valued employee with a wealth of experience and knowledge who performed the duties of her job with skill and compassion, and exceeding expectations.

24. No performance reviews were provided to Ms. Hall for the years 2021 or 2022.

25. Before adopting an official Covid-19 vaccination program, Sheppard Pratt began accepting medical and religious exemptions.

26. On August 31, 2021, Ms. Hall submitted a request for an exemption to the then in effect informal vaccination policy. The form required by Sheppard Pratt required that a religious leader to include a verification of a sincerely held religious belief.

---

[3] This summary of the duties of an Admissions Coordinator was found on Sheppard Pratt's website in the Careers tab. https://perma.cc/3G7W-QZ34.

27. Ms. Hall provided support for her religious beliefs and the importance of abiding by those religious beliefs, referring to supporting scripture, 1 Corinthians 3:16-17. Ms. Hall stated that her sincerely held religious beliefs included the theory that her "body is a sacred temple belonging to [her] Creator, God. [Ms. Hall] bear[s] responsibility to refrain from potential hard such as the Covid vaccine." *EXHIBIT 1*. Ms. Hall added that because "God alone is the giver and taker of life" stating that she objected to the use of fetal cells in the development of the then available Covid Vaccines.

28. Ms. Hall provided a letter from Pastor Jason Moore, Director of GGWO Pastoral Care for the Greater Grace World Outreach. *EXHIBIT 2*. Pastor Moore confirmed that Ms. Hall was a member in good standing of the Greater Grace World Outreach local church in Baltimore, MD. Pastor Moore confirmed that Ms. Hall's beliefs were based on scripture, describing her beliefs as religious convictions.

29. On or about October 14, 2021, Ms. Hall participated in a zoom meeting to discuss her request for a religious exemption. From the start, the focus was trying to persuade Ms. Hall to change her mind about not being vaccinated. Ms. Hall's response explained that her religious beliefs were a conviction and as such was not something that could be relinquished. Ms. Hall was informed that if she didn't change her mind and receive a Covid-19 vaccination, she would be terminated. When asked why accommodations couldn't be put in place, Ms. Hall was told that the Covid vaccination was mandatory.

30. Ms. Hall expressed confusion that colleagues with medical conditions had received exemptions but to the best of her knowledge no religious exemptions had been granted.

When Ms. Hall asked how many religious exemptions had been granted, the question was not answered.

31. Further, based on the discussion during the zoom session, Ms Hall had concerns that her request for a religious exemption had not been considered. Management responded that the whole zoom session was devoted to Ms. Hall. It is unclear if management's response referred to the October 14, 2021, zoom that Ms. Hall participated in or another zoom session which Ms. Hall did not participate.

32. Ms. Hall's was scheduled for termination on or about November 5, 2021.

33. Even so, in October 2021, Ms. Hall's supervisor reached out to Ms. Hall with a request that Sheppard Pratt push back the termination date to allow Ms. Hall to fulfill her job duties while a colleague was out. Ms. Hall's termination date was changed to November 12, 2021.

34. When it benefited Sheppard Pratt, Ms. Hall's vaccination status was not an issue.

35. On or about November 8, 2021, Sheppard Pratt promulgated the Mandatory Flu Vaccination & Covid-19 Policy. The Policy states in part

> In order to conform with applicable federal and state requirements, including the Maryland Secretary of Health's Amended Directive and Order Regarding Vaccination Matters dated August 18, 2021, recommendations from the Center for Disease Control and Prevention (CDC), and to help staff and the community reduce transmission of Covid-19, all staff are required to be vaccinated or have an approved exemption.
>
> \*\*\*
>
> Noncompliant staff will be met with individually and will exit employment. If the individual becomes compliant by either being vaccinated or by obtaining an approved medical or religious exemption before the last day of work, employment may continue.

*EXHIBIT 3.*

36.   At all times relevant to this civil action, Ms. Hall performed the duties of her position on-site with use of CDC recommended precautions such as a mask and testing.

37.   Ms. Hall requested a termination letter so that she could apply for unemployment benefits.

38.   After her termination, Ms. Hall applied for unemployment benefits. On or about December 17, 2021, Ms. Hall received notification from the Maryland Department of Labor, Division of Unemployment Insurance that her application had been denied because Sheppard Pratt reported that Ms. Hall was fired for "repeatedly fail[ing] to follow safety standards in spite of numerous warnings." *EXHIBIT 4,*

39.   The denial of unemployment insurance notice then determined that Ms. Hall's "actions were a regular and wanton disregard of his/her obligations, and the actions are considered gross misconduct in connection with the work within the meaning of Section 8-1002 of the Maryland Unemployment Insurance law." *Id.*

40.   Upon reading the notice from the Department of Unemployment Insurance, Ms. Hall was devastated. Ms. Hall did not understand how Sheppard Pratt could value her so much that they moved her termination date yet expressed such disdain for her to the Department of Unemployment Insurance.

41.   On or about February 17, 2022, Ms. Hall made a formal charge of discrimination against Sheppard Pratt for religious discrimination under Title VII of the Civil Rights Act. Ms. Hall claimed retaliation and religious discrimination when Sheppard Pratt denied her request for a religious exemption. *EXHIBIT 5.*

42. In a position statement submitted to EEOC, Sheppard Pratt misidentified Ms. Hall's duties. Sheppard Pratt stated that Ms. Hall's duties included administering medicine and performing medical procedures. Sheppard Pratt's position statement referenced six exhibits that did not become part of the EEOC record and are unavailable on the EEOC portal. Ms. Hall does not recall receiving the exhibits.

43. On or about September 19, 2022, the EEOC closed the matter without determining the merits of the case and issued a Notice of Right to Sue letter. *EXHIBIT 6.*

44. The deadline to file a civil action is December 18, 2022.

45. Plaintiff has made commitments to her religious beliefs that guide her through her life.

46. As a part of her individual commitment to God, she strives to live her life according to lessons espoused in the bible. Thou shalt love the Lord thy God with all thy heart, and with all thy soul, and with all thy mind. (Matthew 22:37-39). Plaintiff believes that her body is created in the image of God (Genesis 1:27) and is the temple of the Holy Spirit. (I Corinthians 6:19). Based on their exercise of her religious beliefs, receiving a Covid-19 vaccine would violate the temple of the Holy Spirit that is her body.

47. Plaintiff seeks refuge and solace through spiritual guidance. When faced with difficult decisions, she understand that she can use reason to interpret the guidance provided by prayer.

48. The sincerity of Plaintiff's religious beliefs has not been questioned by Defendant.

49. This case does not seek to argue the veracity of safety claims made by pharmaceutical companies or the effectiveness of the available Covid-19 vaccines. Plaintiff

acknowledges the horrific reality of the pandemic and the psychological and physical toll the virus has taken on so many people. The acknowledgment of the sorrow the pandemic has caused does not negate the need for Plaintiff to consider whether obtaining a Covid-19 vaccine goes against her religious convictions. Ms. Hall has determined it does.

## CAUSE OF ACTION
### Violation of Title VII of the Civil Rights Act of 1964
### 42 U.S.C. §2000e

50. Plaintiff incorporates paragraphs 1 through 49 as if set forth fully here.

51. Plaintiff was employed by Sheppard Pratt Healthcare Services, Inc. from 2007 through November 12, 2022.

52. Defendant implemented policies requiring all employees to be vaccinated against Covid-19.

53. Defendant's policies allowed for requests for exemptions for a sincerely held religious belief or a disability that prevented the employee from complying with the policy.

54. Based on information and belief, Defendant provided reasonable accommodations for employees with disabilities.

55. Plaintiff requested an exemption from the vaccine requirement on or about August 31, 2022.

56. Plaintiff's request was based on her sincerely held religious beliefs that her body is a temple.

57. As required by the form to request a religious exemption to include a statement from the employee's religious provider to certify that the employee was a member of the church and that the reasons given for the religious exemption was correct.

58. Plaintiff completed the form, citing 1 Corinthians 3:16-17 for the belief that her body is a temple and taking the Covid-19 vaccination would cause her harm.

59. The pastor from Plaintiff's church wrote a letter supporting Plaintiff's religious exemption request.

60. On or about October 14, 2022, Plaintiff was informed that the religious exemption request had been denied because "vaccines are mandatory."

61. Plaintiff was terminated because she would not agree to become vaccinated.

62. On or about November 12, 2022, Plaintiff's termination was finalized.

63. After the termination, Plaintiff applied for Unemployment Insurance.

64. Defendant provided information that Plaintiff had been fired because of her repeated failure to follow safety rules.

65. As a result, Plaintiff was denied Unemployment Insurance for Gross Misconduct.

66. Defendant discriminated against Plaintiff when Defendant denied the religious exemption without stating that granting the exemption would be an undue burden for Defendant.

67. Defendant discriminated against Plaintiff when Defendant did not consider the less restrictive alternatives of wearing a mask and testing.

68. As a result of Defendant's discriminatory actions, Plaintiff was injured and suffered damages.

## PRAYER FOR DECLARATORY RELIEF

WHEREFORE, Plaintiff asks this Court to enter an order:

a. Declaring that Defendant has violated federal anti-discrimination laws.

b. Awarding Plaintiff compensatory damages.

    c.      Awarding Plaintiff punitive damages.

    d.      Awarding Plaintiff costs and reasonable attorneys' fees and expenses; and

    e.      Granting Plaintiff all any other relief that the Court deems just and proper.

Respectfully submitted on this December 18, 2022, by

                      COUNSEL FOR PLAINTIFF
                      Carol Hall

                      *Theresa Kraft /s/*

                      **Theresa Kraft, Esq.**
                      Wilt & Kraft, PLLC
                      1629 K Street NW, Suite 300
                      Washington, DC 20006
                      202-508-3648 (office)
                      603-568-2464 (cell)
                      **TKraft@WiltandKraft.com**